AO 472  (Rev. 09/16)  Order of Detention Pending Trial

# UNITED STATES DISTRICT COURT
для
Eastern District of Texas

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) Case No. 4:22-mj-00252 |
| Carlos Alberto Velasquez | ) |
| *Defendant* | ) |

## ORDER OF DETENTION PENDING TRIAL

### Part I - Eligibility for Detention

Upon the

&boxtimes; Motion of the Government attorney pursuant to 18 U.S.C. § 3142(f)(1), or
&boxtimes; Motion of the Government or Court's own motion pursuant to 18 U.S.C. § 3142(f)(2),

the Court held a detention hearing and found that detention is warranted. This order sets forth the Court's findings of fact and conclusions of law, as required by 18 U.S.C. § 3142(i), in addition to any other findings made at the hearing.

### Part II - Findings of Fact and Law as to Presumptions under § 3142(e)

☐ **A. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(2)** *(previous violator)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because the following conditions have been met:

☐ **(1)** the defendant is charged with one of the following crimes described in 18 U.S.C. § 3142(f)(1):
  ☐ **(a)** a crime of violence, a violation of 18 U.S.C. § 1591, or an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; **or**
  ☐ **(b)** an offense for which the maximum sentence is life imprisonment or death; **or**
  ☐ **(c)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508); **or**
  ☐ **(d)** any felony if such person has been convicted of two or more offenses described in subparagraphs (a) through (c) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (a) through (c) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; **or**
  ☐ **(e)** any felony that is not otherwise a crime of violence but involves:
    **(i)** a minor victim; **(ii)** the possession of a firearm or destructive device (as defined in 18 U.S.C. § 921); **(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250; **and**
☐ **(2)** the defendant has previously been convicted of a Federal offense that is described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; **and**
☐ **(3)** the offense described in paragraph (2) above for which the defendant has been convicted was committed while the defendant was on release pending trial for a Federal, State, or local offense; **and**
☐ **(4)** a period of not more than five years has elapsed since the date of conviction, or the release of the defendant from imprisonment, for the offense described in paragraph (2) above, whichever is later.

☒ **B. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(3)** *(narcotics, firearm, other offenses)*:  There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses: **[PARTIES AGREED AT HEARING PRESUMPTION APPLICABLE]**

☒ **(1)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508);

☐ **(2)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;

☐ **(3)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

☐ **(4)** an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581-1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**

☐ **(5)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

☒ **C. Conclusions Regarding Applicability of Any Presumption Established Above**

☒ The defendant has not introduced sufficient evidence to rebut the presumption above.

**OR**

☐ The defendant has presented evidence sufficient to rebut the presumption, but after considering the presumption and the other factors discussed below, detention is warranted.

## Part III - Analysis and Statement of the Reasons for Detention

After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, the Court concludes that the defendant must be detained pending trial because the Government has proven:

☒ By clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

☒ By a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.

In addition to any findings made on the record at the hearing, the reasons for detention include the following:

☒ Weight of evidence against the defendant is strong
☒ Subject to lengthy period of incarceration if convicted
☒ Prior criminal history
☐ Participation in criminal activity while on probation, parole, or supervision
☐ History of violence or use of weapons
☐ History of alcohol or substance abuse
☐ Lack of stable employment
☐ Lack of stable residence
☐ Lack of financially responsible sureties
☐ Lack of significant community or family ties to this district
☒ Significant family or other ties outside the United States

☐ Lack of legal status in the United States
☐ Subject to removal or deportation after serving any period of incarceration
☐ Prior failure to appear in court as ordered
☐ Prior attempt(s) to evade law enforcement
☐ Use of alias(es) or false documents
☐ Background information unknown or unverified
☐ Prior violations of probation, parole, or supervised release

OTHER REASONS OR FURTHER EXPLANATION:
see Attachment A.

Defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  Defendant must be afforded a reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

At the conclusion of the detention hearing on April 28, 2022, the Court took the issue of detention under advisement.  The Court now finds Defendant shall be detained.

**SIGNED this 11th day of May, 2022.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT "A"**

Defendant Carlos Alberto Velasquez ("Defendant") is charged by Complaint with a violation of Title 21 U.S.C. § 846—Conspiracy to Possess with the Intent to distribute a mixture or substance containing a detectable amount of Fentanyl.  This offense carries a term of imprisonment, if 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide (Fentanyl) – A term of imprisonment of not less than 10 years and not more than life imprisonment, a fine not to exceed $10 million, or both; supervised release of at least five years.  If more than 40 grams but less than 400 grams of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide (Fentanyl) – A term of imprisonment of not less than 5 years but not more than 40 years, a fine not to exceed $5 million, or both; supervised release of at least four years.  If less than 40 grams of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide (Fentanyl) – A term of imprisonment of not more than 20 years imprisonment, a fine not to exceed $1,000,000.00 or both; supervised release of at least three years.

The Government has sought to detain under Title 18 U.S.C. § 3142(f)(1) and (f)(2).  On April 28, 2022, the Court held a hearing ("Hearing") to determine whether Defendant should be held in custody pending trial in accordance with 18 U.S.C. § 3142(f).  Assistant United States Attorney Ernest Gonzales appeared on behalf of the Government.  Defense counsel Rob Campos appeared on behalf of Defendant.  The Parties concurred the presumption is applicable to this case.

At the conclusion of Hearing on April 28, 2022, the Court took the matter under advisement.  The Court has considered the testimony and evidence presented at Hearing (including the evidence proffered, the testimony of Marcus West, and the Pretrial Services Report), in light of all the factors listed in 18 U.S.C. § 3142(g) - including the nature and circumstances of the offense charged, the apparent weight of the evidence against Defendant, Defendant's history and characteristics, and the nature and seriousness of the danger to any person or the community.

**EVIDENCE PRESENTED:**

**<u>Defendant Has Failed to Rebut the Presumption.</u>**

The Government offered testimony from Marcus West, Drug Enforcement Administration ("SA West").  SA West has direct knowledge of the investigation.  The Court found his testimony to be credible.  SA West testified to the following:

SA West testified that Defendant is involved in a large-scale drug trafficking organization ("DTO") connected to a violent gang involved with the Sineloa cartel.  In the latter part of 2021, DEA Dallas agents and officers began investigating a large-scale Fentanyl DTO operating in the Eastern District of Texas and the surrounding DFW area.  With the help of several cooperating witnesses, DEA Dallas identified Rafael Gallegos ("Gallegos") as the leader of the operation.  Gallegos traffics about 40 kilograms of various drugs per week into the United States from Mexico.  At Hearing relevant to his Fentanyl trafficking, SA West testified that DEA Dallas seized 250,000 Fentanyl pills from a storage unit in Dallas owned by Gallegos.  DEA also seized 300,000 Fentanyl pills at Gallegos' "stash house" in Plano.  In addition to trafficking drugs, Gallegos also transports firearms from the United States to Mexico for the Sinaloa cartel.  The instant DTO is violent.  Specifically, investigators linked Gallegos to the murder of a woman in Dallas shot dead on the sidewalk after she dropped her kids off for school in the morning.  Her husband was unable to pay

ATTACHMENT "A" - 1

the debt he owed to Gallegos. Gallegos also ordered the killing of an individual who insulted his son. SA West testified that Gallegos is responsible for many other unsolved murders and kidnappings. Gallegos is currently a fugitive hiding in a secure compound surrounded by guards in Durango, Mexico with at least ten other individuals involved in the DTO.

Through the assistance of a cooperating defendant, Joseph Ramirez Santos ("Santos"), who himself has been identified as distributing more than 1.2 million Fentanyl pills, DEA set up a controlled drug purchase that led to Defendant's identification and arrest. Santos has identified his source of supply for the Fentanyl which he is distributing in EDTX as Gallegos. On April 21, 2022, at the direction of investigators, Santos made a recorded call to Gallegos and requested Fentanyl pills. Gallegos said he would give Santos 50,000 Fentanyl pills in exchange for $90,000. Gallegos told Santos to meet his Fentanyl courier at a Dallas Kroger parking lot at 9:00 p.m. that day and that his courier would be in a white Volkswagen. Once investigators arrived at the parking lot, Gallegos provided real time updates to Santos on the phone. Gallegos told Santos "it is there" and at the same time, investigators witnessed Defendant in a white Volkswagen circle the parking lot. While Defendant circled the lot, instructions were exchanged to meet by the orange Dodge Challenger. When Defendant drove to the orange Dodge Challenger, investigators pulled behind the vehicle, and ordered the Defendant to turn off the vehicle and exit the car. Initially, Defendant did not obey law enforcement's commands and attempted to flee, but Defendant eventually exited the vehicle and was arrested.

Law enforcement found money remitters with the name commonly used to wire money to Gallegos in the Defendant's car. Following his arrest, Defendant gave investigators the code to unlock his phone. Through review of the phone, it was clear Defendant has been directed to attend the meeting by his son, who lived with him. Investigators also found a message from his son Carlos Velasquez Jr. directing Defendant to "look for a Glock." Defendant's phone shows numerous phone calls to Defendant from Velasquez Jr. before and during his arrest. Through the investigation it is believed Velasquez Jr. is in direct contact with Gallegos, distributes pills for Gallegos; he is a target of the investigation. The whereabouts of Velasquez Jr. are unknown.

SA West testified that the Defendant is a flight risk. Specifically, SA West testified that if the Defendant was released, he would be encouraged to flee to Durango, Mexico to Gallegos' secure compound. Gallegos has been encouraging individuals to flee to the Durango compound to protect himself from arrest. Additionally, Defendant's wife resides in Mexico and the whereabouts of Velasquez Jr. are unknown. SA West testified that the Defendant is a danger to the community because he handled and lost $90,000 of drug money. SA West explained that when a member of a DTO loses a large amount of money and goes to jail, DTO members usually retaliate to punish them and keep them from testifying in court. Moreover, he is involved with the distribution of Fentanyl, which is a highly dangerous drug and is an epidemic in this country.

The Pretrial Services Report reflects Defendant was previously arrested twice for the theft of property, and he received probation on both occasions. Defendant reported to Pretrial Services that he immigrated from El Salvador in 1989. However, according to ICE, Defendant entered the United States on March 31, 2000, and he became a Naturalized United States Citizen on May 11, 2006. Defendant has an El Salvadorian passport and it is known that he has traveled to El Salvador to visit his family, most recently in 2021. Though Defendant has family members in the area, Defendant's wife currently lives in Mexico.

Defendant did not offer any evidence or testimony at Hearing.

ATTACHMENT "A" - 2

**CONCLUSION:**

Based on the allegations in the indictment, the evidence presented at Hearing, and the information in the Pretrial Services Report, the Court concludes as follows:

(1)  Pursuant to 18 U.S.C. § 3142(e)(3)(A), a rebuttable presumption exists that no condition or combination of conditions will reasonably assure the safety of the community.  *See United States v. Trosper*, 809 F.2d 1107, 1110 (5th Cir. 1987) (presumption against pretrial release arises based on indictment's allegations).

(2)  In addition to the presumption, the very nature of drug offenses constitutes a danger to the community, which may justify pretrial detention. *United States v. Morales*, No. 4:11CR3, 2011 WL 3651355, at *3 (E.D. Tex. Aug. 19, 2011) (citing *United States v. Royal,* 759 F. Supp. 1238 (E.D. Tex. 1990)); *see also United States v. Morris*, 608 F. App'x 299 (5th Cir. 2015) (citing *United States v. Fortna*, 769 F.2d 243 (5th Cir. 1985)); *United States v. Mathes*, 593 F. App'x 391, 392 (5th Cir. 2015).

(3)  Defendant has not rebutted the presumption that there is no condition or combination of conditions on which Defendant could be released that would reasonably assure Defendant's appearance at trial and that Defendant would not pose a danger to the community.

(4)  Defendant is therefore ordered detained pending trial.

ATTACHMENT "A" - 3